IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                                                        No. 14-mc-0033 JCH

TWENTY-NINE PRE-COLUMBIAN AND
COLONIAL ARTIFACTS FROM PERU,

    Defendant.

**MAGISTRATE JUDGE'S
PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

    THIS MATTER is before me on Plaintiff's Motion to Compel Production of Documents [from non-parties David Walker and Walker Textile Conservation, LLC (collectively, "Walker")] [Doc. 1], filed on July 9, 2014. Walker responded to the Motion on July 23, 2014, [Doc. 6], and Plaintiff replied on August 5, 2014, [Doc. 9]. The presiding judge, the Honorable Judith C. Herrera, United States District Judge, referred the matter to me on August 11, 2014. [Doc. 12]. I heard oral argument on the Motion to Compel on August 15, 2014. [Doc. 16]. Having considered the briefing, oral argument, and relevant law, and being otherwise fully advised in the premises, I will recommend that the Motion be granted in part and denied in part.

**Background**

    On August 21, 2010, U.S. Customs and Border Protection officers at the Miami International Airport detained 33 items contained in the luggage of Peruvian citizen Jean Combe Fritz. [Doc. 6-3] at 17–18. The officers suspected that the items were ancient indigenous artifacts. [Doc. 6-3] at 7–8, 17. On questioning, Combe Fritz gave the officers

inconsistent explanations regarding the items and his travel. [Doc. 6-3] at 7–8, 17. Ultimately, however, Combe Fritze admitted that the items were intended for those named on a list given to him by his father. [Doc. 6-3] at 17. One of the names on the list was Walker Textile Conservation of Santa Fe, New Mexico. [Doc. 6-3] at 17.

Combe Fritz's return ticket was for August 23, 2010, two days after his arrival. [Doc. 6-3] at 17. A subsequent check of travel records from the Department of Homeland Security revealed that Combe Fritz and his father, Jean Combe Nuñez, had between them made 21 trips to Miami in the last ten years, most lasting one or two days and six lasting only one day, with no overnight stay planned at all. [Doc. 6-3] at 18. The government suspected that Combe Fritz and his father were part of an illegal operation to smuggle ancient artifacts into the United States. [Doc. 9] at 3. The government believed that, considering the very short time periods that Combe Fritz and/or his father were scheduled to stay in the United States, and considering the value of the items (one of the items alone is valued at $200,000), there must be an intermediary or intermediaries who planned to transfer the items to Walker. [Doc. 9] at 3.

On May 10, 2013, the government filed a civil forfeiture action in the district court for the Southern District of Florida seeking to forfeit 29 of the 33 seized items, pursuant to the Convention on Cultural Property Implementation Act, 19 U.S.C. § 2609. [Doc. 6-3] at 5–13 (complaint in 13-cv-21697 JAL (S.D. Fla. May 10, 2013) ("first Florida case"). Then, on July 18, 2013, the government filed a second civil forfeiture action in the Southern District of Florida seeking to forfeit three more of the 33 items as stolen, smuggled, or clandestinely imported or introduced into the United States contrary to law, pursuant to 19 U.S.C.

§ 1595a(c)(1)(A). [Doc. 6-3] at 14–20 (complaint in 13-cv-22585 JAL (S.D. Fla. July 18, 2013) ("second Florida case")). In conjunction with the first Florida case, the United States served Walker with a subpoena for records and a deposition under Fed. R. Civ. P. 45. [Doc. 1-1] at 4. Among other things, the subpoena required Walker to provide:

> the following documents and records in your custody and control relating to textiles and other cultural artifacts from Peru, including artifacts represented to you as being from Peru, or believed by you to be from Peru:
>
> . . .
>
> 3. All records and documents related to conservation work performed by you, including bills for professional services, from January 2008 through December 2012.

[Doc. 1-1] at 4. The United States explains that Walker's records and knowledge should lead to the intermediary. [Doc. 9] at 4.

Although Walker is willing to provide some information and submit to deposition questioning about certain matters, he objects to portions of the subpoena. [Doc. 6] at 3–5. Walker contends that he does not know Combe Fritz, was never contacted concerning any of the 32 items at issue in the Florida cases, and has no reason to believe that any of his clients has anything to do with Combe Fritz or the 32 items. [Doc. 6] at 2. Walker does not object to producing documents concerning the 32 items, but there are none. [Doc. 6] at 2. Nor does he object to being deposed regarding his knowledge of any of the 32 items, but he has none. [Doc. 6] at 2. However, Walker does object to the temporal and substantive breadth of the subpoena. He contends that the information sought is irrelevant to the government's claims in the underlying Florida cases. Therefore, he believes that divulging his records and knowledge

3

would unnecessarily violate the confidentiality that he claims is fundamental to his successful business. Lastly, he argues that responding to the subpoena would subject him to undue logistical burdens.

I held oral argument on the motion on August 15, 2014. At that time, I orally granted both parties' requests to take judicial notice of certain information from the underlying forfeiture cases in the Southern District of Florida. *See* [Doc. 6-3] at 1–4 and [Doc. 8]. I also informed the parties of my intended ruling in the hopes that with such knowledge, they could come to a resolution. However, on August 22, 2014, they informed me that they could not.

## Standard

Federal Rule of Civil Procedure 45 governs the issuance of a subpoena to a nonparty for the production of documents. *See* Fed. R. Civ. P. 45(a)(1)(A)(iii). The production of documents and a motion to compel under Rule 45 are both governed by the general discovery rules under Rule 26(b). *Covey Oil Co. v. Cont'l Oil Co.*, 340 F.2d 993, 997 (10th Cir. 1965); *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 & n.4 (D. Kan. 2003).

The proper scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Information sought is relevant "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Federal courts have held that the scope of discovery under Rule 26 is broad. *See Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995); *Sanchez v. Matta*, 229 F.R.D. 649, 654 (D.N.M. 2004) ("The federal courts have held that the scope of discovery should be broadly and liberally construed to achieve the full disclosure of all potentially relevant

4

information."). The federal discovery rules reflect the courts' and Congress's recognition that "mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). As a result, Rule 26 "contemplates discovery into any matter that bears on or that reasonably could lead to other matter[s] that could bear on any issue that is or may be raised in a case." *Anaya v. CBS Broadcasting, Inc.*, 251 F.R.D. 645, 649–50 (D.N.M. 2007) (alteration in original) (internal quotation marks omitted).

A district court, however, is not "required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim." *McGee v. Hayes*, Nos. 01-7113, 01-7144, 43 F. App'x 214, 217 (10th Cir. July 22, 2002) (unpublished); *see Tottenham v. Trans World Gaming Corp.*, No. 00 Civ. 7697, 2002 WL 1967023, at *2 (S.D.N.Y. 2002) ("Discovery, however, is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support." (internal quotation marks omitted)); *Hardrick v. Legal Servs. Corp.*, 96 F.R.D. 617, 618 (D.D.C. 1983) (noting that courts do, and should, remain concerned about "fishing expeditions, discovery abuse and inordinate expense involved in overbroad and far-ranging discovery requests" (internal quotation marks omitted)). "[B]road discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Gomez*, 50 F.3d at 1520 (internal quotation marks omitted).

Courts have recognized that, while it is true that relevance in discovery is broader than that required for admissibility at trial, "the object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue." *Zenith*

*Elecs. Corp. v. Exzec, Inc.*, No. 93 C 5041, 1998 U.S. Dist. LEXIS 215, at *8, 1998 WL 9181, at *2 (N.D. Ill. Jan. 5, 1998) (unpublished) (internal quotation marks omitted).  The information must be "reasonably calculated to lead to the discovery of admissible evidence." *Id.*

Rule 26, which once stated that a party could obtain discovery on any matter "relevant to the subject matter," Fed. R. Civ. P. 26(b)(1) (1999), was amended in 2000 to state that the material must be "relevant to the claim or defense of any party," Fed. R. Civ. P. 26(b)(1).  Under the 2000 amendment, however, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."  *Id.*  The Advisory Committee explained that the amendment was "designed to involve the court more actively in regulating the breadth of sweeping or contentious discovery."  Fed. R. Civ. P. 26(b)(1) advisory committee note to 2000 amendment (stating that the amendment was made with the intent "that the parties and the court focus on the actual claims and defenses involved in the action").  The Advisory Committee further explained:

> Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses, and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action. The good-cause standard warranting broader discovery is meant to be flexible.

*Id.*

## Analysis

Walker opposes the government's motion on numerous grounds.  First, and most fundamentally, Walker argues that the information sought is not relevant to the government's claims in either of the Florida forfeiture cases.

Walker explains that in order to succeed in the first Florida case, the government must prove: (a) that there is no "documentation of lawful exportation," 19 U.S.C. § 2606(a), and (b) that the materials are "designated archeological and ethnological material," *id.* at § 2609, that have been so listed by the Secretary of State, *id.* at § 2610. [Doc. 6] at 15. Next, Walker explains that in order to succeed in the second Florida case, the government must prove that the three items were introduced into the United States contrary to law because they were stolen, smuggled, or clandestinely imported. [Doc. 6] at 17 (citing § 1595a(c)(1)(A)).

The government does not disagree with Walker about these standards. Rather, the disagreement is about whether the information sought by the subpoena is relevant to these standards. Walker insists that it is not. As Walker see it, identifying the suspected intermediary—to whom Combe Fritz supposedly planned to give the items *after* he had smuggled them into the United States—is "wholly irrelevant" to the elements of the first Florida case. [Doc. 6] at 16. According to Walker, the identity of the supposed intermediary is not relevant to whether the items were lawfully exported from Peru or whether the items are designated archeological material. *Id.* Walker argues that the information sought under the subpoena is not relevant to the second Florida case either. *Id.* at 18. The identity of the intermediary—whose only role in the alleged scheme would have been triggered after the items were already in the United States—is not relevant to whether the pieces were stolen, are the property of Peru by virtue of its patrimony laws, or were improperly smuggled into the United States. *Id.* Besides, Walker argues, the government admits that it already has evidence to prove the elements of the claims. *Id.* at 15 n.5, 18 n.6.

7

The United States, however, argues that the information sought pursuant to the subpoena is relevant to the elements that it must prove in the first Florida case. The government's aim is not merely to identify the intermediary. Rather, the government's aim is to identify the intermediary and, more importantly, to secure his/her testimony as an "eyewitness[] to acts of the conspiracy and the persons involved in it, as would be the person who was to transport the textile from Miami to New Mexico[;] that information could be critical to the government's case." [Doc. 9] at 4.

I agree with the United States that the information sought is relevant to its claims in the first Florida case. It is beside the point whether the government already has *some* evidence to prove its claims. There is no limit on the quantum of evidence that the government may amass—within the rules—to make its case as strong as possible. *See* Fed. R. Civ. P. 26(b)(1). I find that Walker's records and knowledge are reasonably calculated to lead to the discovery of evidence that is admissible and relevant to the elements that the government must prove in the first Florida case. I make no finding regarding the relevance to the second Florida case because the subpoena at issue before me arises only from the first Florida case.

Walker opposes the motion to compel on other grounds, but none persuades me that the motion should be denied entirely. First, Walker urges that the motion be denied because government failed to provide any *admissible evidence* showing that the discovery sought is relevant to the claims in the two Florida cases and, instead, merely presented arguments of counsel. [Doc. 6] at 14 (citing to Fed. R. Civ. P. 26, D.N.M.LR-Civ. 7.5(b)). However, Walker does not dispute the factual allegations in the government's briefing. In fact, Walker himself has

8

provided evidentiary support for many of those factual allegations. For example, Walker submitted the complaints in the underlying Florida cases. Under the circumstances, I am satisfied with the factual bases for the government's motion and my recommended ruling. Walker has given me no reason to doubt them.

Second, Walker argues that responding to the subpoena would impose an undue burden on him. [Doc. 6] at 18–22. For example, he explains that the confidentiality of his records "has been a cornerstone of [his] business since its inception[.]" *Id.* at 19. Although he acknowledges that no *privilege* protects the records, he will still be burdened by breaching the confidentiality that his clients have come to rely on. *Id.* at 19–20. Moreover, he objects to the burden of searching through five years of records, as the government requests. *Id.* at 20. Lastly, he claims he is not qualified to determine whether particular pre-Columbian textiles emanate from modern day Peru. *Id.* at 20–21. (The government has asked for records relating to "textiles and cultural artifacts from Peru." [Doc. 1-1] at 4.) He explains that the cultures of pre-Columbian Peru span several modern day countries, including Bolivia, Ecuador, Chile, Colombia, and Argentina. *Id.* at 21−22. I agree with Walker that the subpoena, in its current form, would pose an undue burden on him. Accordingly, in weighing that burden against the likely benefits to the government, the subpoena should be limited temporally and should eliminate any reference to Peru.

Next, Walker argues that the motion should be denied because the government failed to comply with Fed. R. Civ. P. 45(a)(1)(A)(i) when it did not identify the issuing court on the subpoena. [Doc. 6] at 22. However, Walker provides no reason why such failure prejudices him

9

in this instance, and obviously, he and his counsel are aware of the issuing court. Nor does Walker explain what benefit there could be in requiring the government to reissue the subpoena merely to include the name of the issuing court. In fact, such result would be a significant waste of time and resources for everyone involved, including the district courts in District of New Mexico and the Southern District of Florida.

Finally, Walker urges the Court not to consider any new evidence or arguments submitted for the first time in the government's reply. [Doc. 6] at 23. Although new evidence and arguments should not be presented for the first time in a reply, I find that Walker has suffered no prejudice in this instance. In fact, he has alleged no prejudice. Moreover, Walker did not request leave to file a surreply. Walker's counsel had ample opportunity to respond to the new allegations and evidence—and he did so respond—at oral argument. To the extent that Walker's counsel orally renewed his motion to strike the new allegations and evidence from the reply, such oral motion should be denied.

## Conclusion

I find that the subpoena in its current form is overbroad. I have carefully balanced the burdens on Walker—whom the government concedes is an entirely innocent third party—in producing the records and in submitting to deposition questioning with the likely benefits to the government. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii), 46(d)(1). I find that the government should be entitled to the records sought but only as to textiles (rather than as to "cultural artifacts"),[1] only

---

[1] At oral argument, Walker's counsel confirmed that Walker works exclusively in textiles and does not work with other artifacts such as statues, pottery, or jewelry.

within timeframes that are directly connected to Combe Fritz's and his father's trips to the United States, and without reference to Peru.

Accordingly, I respectfully recommend that Walker (i.e., Mr. Walker himself as well as Walker Textiles Conservation, LLC) be compelled to produce **all records and documents in his custody and control, including bills for professional services, related to conservation work on pre-Columbian textiles received by Walker within 30 days after each of the following dates:**[2]

| | |
|---|---|
| **September 17, 2005** | **June 2, 2008** |
| **March 28, 2006** | **January 28, 2009** |
| **June 10, 2006** | **March 26, 2009** |
| **December 28, 2006** | **May 15, 2009** |
| **January 12, 2007** | **July 9, 2009** |
| **August 8, 2007** | **September 18, 2009** |
| **September 13, 2007** | **February 22, 2010** |
| **November 22, 2007** | **May 14, 2010** |
| **March 20, 2008** | **August 21, 2010** |
| **March 21, 2008** | |

**IT IS THEREFORE RESPECTFULLY RECOMMENDED** that Plaintiff's Motion to Compel the Production of Documents [Doc. 1] be **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER RECOMMENDED** that a protective order be **ISSUED** incorporating the Court's final ruling for purposes of Walker's deposition.

---

[2] These are the dates on which Combe Fritz and/or his father arrived in the United States on their alleged smuggling trips, going back five years from August 21, 2010, the date of the detainment of the items at issue in this case. [Doc. 9-1] at 4–5.

**IT IS FURTHER RECOMMENDED** that Walker's request for his costs associated with opposing the motion be **DENIED** and that each party bear its own costs and fees pursuant to Fed. R. Civ. P. 37(a)(5)(C).

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(B). **A party must file any written objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**